UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE WILLIAMS,

     Petitioner,       Case Number: 04-CV-74000

v.              HON. NANCY G. EDMUNDS

BLAINE LAFLER,

     Respondent.

                  /

**OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Dwayne Williams has filed a *pro se* petition for a writ of habeas corpus under

28 U.S.C. § 2254.  Petitioner, who is currently incarcerated at the Saginaw Correctional Facility

in Freeland, Michigan, challenges his convictions for second-degree murder, felon in possession

of a firearm, and possession of a firearm during the commission of a felony.  The Court

determines that Petitioner's claims do not warrant relief and, therefore, denies the petition.

**I.**

Petitioner's conviction arises out of the shooting death of Kwaku Frimpong on March 27,

2001.  Frimpong was the former boyfriend of Petitioner's fiancee Traci Newell.  Newell testified

that she, Petitioner, and their two children lived together for the year preceding the shooting in

an apartment in Detroit.  At approximately 8:00 p.m., on March 27, 2001, Petitioner was

preparing to drive their babysitter Nicolette Fields home.  Frimpong appeared at the back door

when Petitioner opened it.  Frimpong and Petitioner began arguing.  Newell testified that she

stepped between the two men and ordered Frimpong to leave.  She noticed that Petitioner had a

gun in his hand.  Newell pushed Petitioner inside the home and tried to convince Frimpong to

leave.  He attempted to kiss her, she screamed, and he ran out the back door of the apartment

building.  When she reentered the apartment, Petitioner was not inside.  She noticed that the

front door of the apartment was open.  Newell testified that she called police.  She then heard

Petitioner and Frimpong arguing and ran outside.  She saw the two men, then heard a gunshot.

She saw Frimpong walking toward Petitioner and heard several more gunshots.  Newell also

testified that, prior to the shooting, Frimpong repeatedly threatened her and had broken into the

apartment four or five times.

Father Daniel Trapp testified that he was in a room at Sacred Heart Academy with a

student, Daniel Doctor, when he heard one or two gunshots.  He looked out the window and saw

a man standing over another man on the ground shooting him.

Daniel Doctor testified that he was in Father Trapp's room when he heard two or three

gunshots and then a woman's scream.  He looked at the window and saw a man trying to comfort

a woman and saw a man lying in the street.  He saw the man walk away from the woman and

approach the man who was lying in the street.  The first man shot the man lying in the street five

times.

Wayne County Forensic Pathologist Carl Schmidt testified that he performed the autopsy

of Mr. Frimpong, and that Mr. Frimpong had five gunshot wounds to the face, one to the neck,

one to the left arm, and one to the right hand.

Petitioner testified in his own defense.  He testified that, since January, Frimpong had

been harassing Petitioner and Newell.  Frimpong threatened to kill Petitioner and Newell.

Petitioner testified that, on the night of the shooting, Frimpong came to his home uninvited.

Newell stepped outside with Frimpong in an attempt to convince him to leave.  Petitioner heard

Newell scream and thought she was being attacked.  Petitioner ran outside and asked Frimpong

to leave them alone.  Frimpong lunged at Petitioner and Petitioner shot him.  He testified that he

continued to shoot because Frimpong continued to approach him.  After Frimpong fell to the

ground, Petitioner testified that he fled because he panicked.

## II.

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of

second-degree murder, felon in possession of a firearm, and possession of a firearm during the

commission of a felony.  On May 14, 2002, He was sentenced to twenty to forty years

imprisonment for the second-degree murder conviction, two-and-one-half to five years

imprisonment for the felon in possession conviction, to be served concurrently with one another

and consecutively to five years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the

following claims:

I.      Did the trial court reversibly err and was defendant denied the right to have a
        properly instructed jury consider all the evidence where the court used a
        nonstandard manslaughter instruction that precluded the jury from consideration
        of all the circumstances surrounding the shooting, including that malice was
        negated by provocation and the homicide was committed in the heat of passion?

II.     Did the trial court err and deny defendant Williams his due process right to a fair
        trial and to present a defense when it excluded testimony of the deceased's mental
        health history and violent delusions that bore on defendant's state of mind relating
        to his defense theories of mitigation and self-defense?

III.    Did the trial judge deny Mr. Williams his state and federal rights to a fair trial, a
        properly instructed jury, and in effect removed voluntary manslaughter from the
        jury's consideration where the jury expressed confusion and asked to be
        reinstructed on manslaughter, but there is no indication that the judge combined
        CJI2d 16.9 with CJI2d 16.8 to ensure that the jury was properly instructed on the

elements of the offense?

The Michigan Court of Appeals affirmed the convictions.  People v. Williams, No.

242865 (Mich. Ct. App. Dec. 23, 2003).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court,

presenting the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme

Court denied leave to appeal.  People v. Williams, No. 125621 (Mich. June 30, 2004).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the same

claims raised on direct review.

### III.

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts

reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law, as
>         determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented in the
>         State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a

petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law.  Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998).

Additionally, this Court must presume the correctness of state court factual determinations.  28

U.S.C. § 2254(e)(1)[1]; *see also* <u>Cremeans v. Chapleau</u>, 62 F.3d 167, 169 (6th Cir. 1995) ("We give

complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary

to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly
> established precedent if the state court applies a rule that contradicts the
> governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established
> precedent if the state court confronts a set of facts that are materially
> indistinguishable from a decision of this Court and nevertheless arrives at a result
> different from [the Court's] precedent.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States

Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the

"unreasonable application" clause when "a state-court decision unreasonably applies the law of

this Court to the facts of a prisoner's case."  <u>Id.</u> at 409.  The Court defined "unreasonable

application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should
> ask whether the state court's application of clearly established federal law was
> objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ simply because that

---

[1]  28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct.

court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 409-11.

## IV.

## A.

In his first claim for habeas corpus relief, Petitioner argues that he was denied his right to a fair trial because the jury instruction regarding manslaughter precluded the jury from considering all of the circumstances surrounding the shooting which might tend to show provocation. The trial court judge interrupted defense counsel's closing argument to state that provocation must have occurred at the time of the shooting and, during jury instructions, again instructed the jury that "provocation must be at the time the Defendant acted." Tr., Vol 6, p. 53.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (*quoting* Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right'". Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (*quoting* Cupp, 414 U.S. at 147). The court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.'" Id. (quoting Boyd v. California, 494 U.S. 370, 380 (1990)).

The Michigan Court of Appeals held that the manslaughter instruction, viewed in its

6

entirety and in the context of the entire set of jury instructions, adequately instructed the jury

regarding provocation.  Because of the importance of this question, the Court sets forth the bulk

of the Michigan Court of Appeals' discussion denying this claim:

> Defendant argues that the trial court erroneously instructed the jury that events
> occurring before the immediate shooting incident could not be considered in
> determining whether adequate provocation existed for purposed of voluntary
> manslaughter. . . . Jury instructions are reviewed as a whole in determining
> whether the trial court made an error requiring reversal.  People v. Caine, 238
> Mich. App. 95, 127; 605 N.W.2d 28 (1999).  Jury instructions do not have to be
> perfect; however, they must fairly present the issues for trial and sufficiently
> protect a defendant's rights.  People v. Canales, 243 Mich. App. 57 1, 574; 624
> N.W.2d 439 (2000).
>
> The principal support for defendant's manslaughter theory was based on events
> occurring before the immediate shooting incident. Apart from defendant's
> testimony, there was substantial evidence presented at trial indicating that the
> victim had engaged in a pattern of threatening and intimidating behavior directed
> at both defendant and defendant's girlfriend, Traci Newell.  Newell testified about
> several past incidents in which the victim said he was going to kill defendant and
> broke into the apartment shared by defendant and Newell.  Many of the incidents
> were reported to the police and were corroborated by the testimony of different
> police officers who investigated the incidents. Defendant's union steward also
> testified that defendant had informed her before the killing that he was afraid for
> his life because of the victim's harassing and threatening conduct.
>
> . . . Voluntary manslaughter, as opposed to murder, exists if (1) the defendant
> killed in the heat of passion, (2) the passion was caused by adequate provocation,
> and (3) there cannot have been a lapse of time during which a reasonable person
> could control his or her passions. . . .
>
> Defendant's challenge arises out of a sua sponte comment made by the trial court
> during defense counsel's closing argument and the court's instruction on
> voluntary manslaughter.  During closing argument, defense counsel, discussing
> voluntary manslaughter and heat of passion – adequate provocation, stated that
> "it's perfectly acceptable under the law to consider the entire history of this story
> because you're the judge as to what time frame – ."  The trial court interjected,
> stating that "actually the provocation must be at the time . . . [i]t doesn't go to
> what happened before."  During instructions on voluntary manslaughter and heat
> of passion – adequate provocation, the court stated: "Again, ladies and gentlemen,
> this provocation must be at the time the defendant acted."  More thorough
> discussions by the trial court and the parties on the topic were conducted outside

7

the presence of the jury.

We believe that the trial court was attempting to communicate that the killing had to have occurred while defendant was in the heat of passion or in a state of emotional excitement, which would be a correct statement of law. . . . Arguably, the trial court may have been under the mistaken belief that the circumstances occurring before the killing could not be considered by the jury for any purpose. As our Supreme Court stated in People v. Townes, 391 Mich. 578, 589; 218 N.W.2d 136 (1974), "[t]o reduce a homicide to voluntary manslaughter the fact finder must determine *from an examination of all of the circumstances surrounding the killing* that malice was negated by provocation and the homicide committed in the heat of passion." (Emphasis added by Michigan Court of Appeals). However, an examination of the entire record reveals that the jury was clearly made aware that it could consider all of the surrounding circumstances with respect to voluntary manslaughter, and, in light of the record, we fail to see how the jury would have thought otherwise based on the brief statements made by the trial court.

First, extensive evidence regarding the history of the victim's interaction with defendant was in fact presented to the jury.

Next, directly following the trial court's sua sponte interjection during defense counsel's closing argument, counsel stated, without objection or any comment by the judge, as follows:

> Okay, I submit to you that the provocation at this time was Traci's scream, *but you can consider everything that Mr. Williams testified to that went into his state of mind or his feelings before . . . .*
>
> * * *
>
> I submit to you that was not enough time to formulate a plan for murder in the first degree, *not considering everything that you believe that may have been in my client's persona, everything that occurred under that reign of terror.* (Emphasis added by Court of Appeals).

Finally, as part of the trial court's instructions on voluntary manslaughter and heat of passion – adequate provocation, the court stated:

> This emotional excitement must have been the result of something that would cause a reasonable person to act rationally or on impulse. . . .

> The test is whether reasonable time had passed under the circumstances of this case. *You __must__ think about __all__ the evidence in deciding what the Defendant's state of mind was at the time of the alleged killing*. (Emphasis added by Court of Appeals).

We conclude that the jury instructions fairly presented the issues from trial and sufficiently protected defendant's rights.  Reversal is not warranted.

Williams, slip op. at 1-3.

Petitioner has failed to show that the state court's well-reasoned decision was contrary to or an unreasonable application of Supreme Court precedent, or that the trial court's instructions did not adequately set forth the elements of voluntary manslaughter under Michigan law.  While the Michigan Court of Appeals acknowledged that the instructions could have been clearer, the Constitution does not require perfect instructions.  Canaan v. McBride, 395 F.3d 376, 391 (7th Cir. 2005).  Petitioner has failed to show a reasonable likelihood that the jury applied the instruction in a way that violated the Constitution.  Therefore, the Court denies habeas relief on this claim.

**B.**

In his second claim for habeas corpus relief, Petitioner argues that the trial court violated his right to due process and right to present a defense when it excluded testimony of the victim's mental health history and propensity for violence.  Respondent argues that this claims is barred from habeas review because it is procedurally defaulted.

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner

files an untimely appeal, Coleman, 501 U.S. at 750, if he fails to present an issue to a state

appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or

if he fails to comply with a state procedural rule that required him to have done something at trial

to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or

file a motion for a directed verdict.  United States v. Frady, 456 U.S. 152, 167-69 (1982);

Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996).  Application of the cause and prejudice

test may be excused if a petitioner "presents an extraordinary case whereby a constitutional

violation resulted in the conviction of one who is actually innocent."  Rust, 17 F.3d at 162;

Murray v. Carrier, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule

applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with

that state procedural rule.  Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert.*

*denied*, 507 U.S. 932 (1993).  Additionally, the last state court from which the petitioner sought

review must have invoked the state procedural rule as a basis for its decision to reject review of

the petitioner's federal claim.  Coleman, 501 U.S. at 729-30.

If the last state court from which the petitioner sought review affirmed the conviction

both on the merits, and, alternatively, on a procedural ground, the procedural default bar is

invoked and the petitioner must establish cause and prejudice in order for the federal court to

review the petition.  Rust, 17 F.3d at 161.

This Court begins its analysis of whether Petitioner's claim is procedurally defaulted by

looking to the last reasoned state court judgment denying Petitioner's claim.  *See* Coleman, 501

U.S. at 729-30.  The last state court to issue a reasoned judgment denying Petitioner's claim, the

Michigan Court of Appeals, held, in pertinent part:

> Defendant next argues that the trial Court abused its discretion by excluding
> testimony related to the victim's alleged mental problems and reputation for
> violence.  However, contrary to what defendant argues, the offer of proof
> regarding the proposed testimony of the victim's brother did *not* establish that he
> was prepared to testify that the victim had a reputation for violence or delusions
> or other mental problems.  Further, defendant did not preserve for review by
> making an appropriate offer of proof regarding whether the victim suffered from
> delusions, other mental problems, or had a reputation for violence.  Because
> defendant has failed to show that a plain error affected his substantial rights, this
> unpreserved issue does not warrant appellate relief.

Williams, slip op. at 3.

Michigan Rule of Evidence 103(a) provides that "an error may not be predicated upon a

ruling which admits or excludes evidence unless a substantial right of the party is affected" and,

in the cases of a ruling which excludes evidence, an offer of proof is made.  In this case, an offer

of proof was not made at trial.  Because Petitioner failed to comply with Rule 103(a), requiring

such an offer, the trial court declined to review Petitioner's claim.  The state court's reliance on

Rule 103(a), a firmly established state procedural rule applicable to Petitioner's claim, precludes

Petitioner from raising this claim on habeas review absent a showing of cause and prejudice.

*Accord* Pillette v. Foltz, 580 F. Supp. 2d 1290, 1293 (E.D. Mich. 1984), *rev'd on other*

*grounds* 1985 WL 12792 (1985).

Petitioner fails to assert cause to excuse his procedural default.  He also fails to

demonstrate that failure to consider this claim will result in a fundamental miscarriage of justice.

Therefore, this claim is barred from federal habeas review because it is procedurally defaulted.

### C.

Finally, Petitioner claims that the trial court's erred when, in response to a question to the

jury, it reinstructed the jury on manslaughter using a non-standard jury instruction.  Respondent

argues that this claim is procedurally defaulted.

The last state court to issue a reasoned opinion addressing this claim, the Michigan Court

of Appeals, held that the claim was not preserved for review because counsel approved the

instruction that was given.   The state court's reliance on Petitioner's failure to object at trial was

an adequate and independent state ground on which to decline to review Petitioner's claim.  *See*

Engle v. Isaac, 456 U.S. 107, 110, 102 S. Ct. 1558, 1563  (1982).  This Court, therefore, may not

review Petitioner's claim unless he has established cause for the default and actual prejudice as a

result of the alleged violation of federal law or unless he has demonstrated that failure to

consider this claim will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at

750, 111 S. Ct. at 2565.

Petitioner fails to assert cause to excuse his procedural default.  He also fails to

demonstrate that failure to consider this claim will result in a fundamental miscarriage of justice.

Therefore, Petitioner's claim is barred from federal habeas review because it is procedurally

defaulted.

**V.**

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus

is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  June 22, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on
June 22, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager